IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ERWIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JEVAUGHN ERWIN, JR., APPELLANT.

Filed September 29, 2020.    No. A-20-409.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Mary Rose Donahue, and Mikki C. Jerabek, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Jevaughn Erwin, Jr., appeals from the order of the district court for Douglas County denying his motion to transfer his case from the district court to the juvenile court. Finding no abuse of discretion in the district court's order, we affirm.

## BACKGROUND

A criminal complaint was filed in the county court on September 26, 2019, charging Erwin with assault in the first degree, a Class II felony, and use of a deadly weapon to commit a felony, a Class IC felony. The case was bound over to the district court on October 18. On October 31, Erwin filed a motion to transfer the case to juvenile court.

- 1 -

On March 6, 2020, the district court held a hearing on Erwin's motion to transfer. We note that the report of Erwin's primary witness, Dr. Colleen Conoley, was completed on February 26, 2020. Therefore it appears that the almost 4-month delay from the filing of the motion until the hearing was due to the time taken for Conoley's report to be completed. At the hearing, the State offered exhibits 1 through 5, which were admitted into evidence. Those exhibits included police reports pertaining to the underlying charges, a DVD recording of Erwin's interview with the Omaha Police Department, police reports detailing a prior contact of Erwin with law enforcement, a juvenile intake summary, and an e-mail from an Omaha police detective regarding contact with the victim about potential participation in restorative justice. Erwin offered exhibits 6 and 7, which were admitted into evidence. These exhibits included the evaluation report authored by Conoley regarding the transfer motion and her curriculum vitae. Erwin also offered testimony from Conoley and Melissa Driscoll, the juvenile court coordinator for the Douglas County Public Defender's office.

Erwin's record of arrest shows that he was born in December 2002. He was 16 years and 9 months old at the time of the present offense and 17 years and 3 months old at the time of the hearing. His prior criminal history included shoplifting in December 2017. For this charge, he received a letter for diversion and according to Conoley's report, completed a diversion program. He had no other criminal record.

Police reports admitted into evidence at the hearing on Erwin's motion to transfer describe the present offense as a narcotics sale that turned violent. ShotSpotter, a system that uses a network of audio sensors to detect the location of a gunshot, was activated on September 23, 2019, indicating two rounds had been fired. Officers were dispatched to the area of 4001 North 42d Street. When the responding officers arrived, they learned that the victim, K.H., had already been transported by a private vehicle to the hospital.

There were several witnesses to the incident including the victim, his friend, and several bystanders. Erwin and his codefendant, J.J., have not provided statements regarding the events resulting in the charges. According to the police reports, witnesses reported that they saw two black males approach K.H.'s car. One of the black males, later identified as Erwin, was described as "chunky," and the other suspect, later identified as J.J., was skinnier and shorter. There was a chase involving K.H. and the two black males. K.H. and the two black males ran beside a car and cut in front of it. The majority of the witnesses that were not directly involved in the incident reported that K.H. was chasing the other two individuals, later identified as Erwin and J.J. Eventually K.H. tackled Erwin. One witness stated that one of the suspects tackled K.H. At that point, one of the suspects shot K.H. twice. There was conflicting testimony as to which of the suspects shot K.H. According to the witnesses, Erwin who under these accounts had been tackled by K.H. either shot K.H. himself or tossed the gun to J.J., who then shot K.H. K.H. himself ultimately reported that Erwin tossed the gun to J.J. who then shot him after being instructed to do so by Erwin. (He had earlier indicated while intubated in the hospital that Erwin shot him.) After K.H. was shot, Erwin and J.J. ran back to K.H.'s car and fled the scene. The car was ultimately recovered several blocks away.

After the shooting, one witness urged K.H. to get into the car. She moved one of her children to the front seat of the car and removed the car seat. When K.H. got into the car, she pulled

- 2 -

up his shirt where she saw one gunshot wound. She looked for something to apply pressure to the wound. Her boyfriend then drove K.H. to the hospital in her vehicle.

Police made contact with one of K.H.'s friends, D.W., who was present with him just before and at the scene of the shooting. D.W. identified J.J. as one of the suspects because he knew J.J. from attending Omaha Benson High School with him. He identified Erwin as the other suspect through a Facebook post. D.W. reported to police that K.H. was attempting to sell approximately $20 worth of marijuana to J.J. and Erwin. J.J. got into the car with K.H. and D.W. J.J. grabbed the marijuana without paying K.H. and accompanied by Erwin ran from the car. K.H. and D.W. chased J.J. and Erwin on foot. D.W. stated that K.H. tackled Erwin and then Erwin took out the gun from his fanny pack and shot K.H.

K.H. was shot twice, once in the upper right stomach area and the other in the upper left abdomen. K.H. was admitted to the hospital where surgery was performed immediately. His injuries included a hole in his diaphragm, a wound to his liver, a collapsed right lung, a left iliac vein injury, broken ribs, and multiple wounds to his small bowel and colon. While recovering from the surgery, he suffered from kidney failure and was on dialysis. Ultimately, one of his legs was amputated. On October 3, 2019, the police were notified that K.H. had swelling on the brain after suffering a seizure during his surgery to have his right leg amputated and his internal organs repaired. The police spoke with the doctors who were concerned that K.H.'s swelling on his brain would lead to significant impairment or death. K.H. ultimately recovered to a point where he could be fully interviewed. The police interviewed him at Madonna Rehabilitation Hospital in November. At that time, K.H. identified J.J. as the person who shot him and Erwin as the one who provided the gun after being tackled.

On September 26, 2019, an arrest warrant was issued for Erwin on charges of first degree assault and use of a weapon to commit a felony. A search warrant was executed at Erwin's residence but he was not found. Erwin's mother stated that she had not seen Erwin in a couple of days. Erwin and J.J. were arrested on October 4, while walking. After being arrested, Erwin was advised of his rights by the police. He noted that he did not want to talk to the police and he wanted a lawyer.

When Erwin was taken into custody, a probation officer completed a Nebraska Juvenile Intake Summary, including an interview with Erwin's mother, Toya Walker. The juvenile intake summary indicated that Erwin was in the 10th grade at the time of his arrest. The summary indicated that Erwin previously had received diversion for a shoplifting charge, but had no other criminal record. Walker stated Erwin has never been arrested. She explained that Erwin moved to Texas for 2 years to live with his father but had moved back to Omaha, Nebraska. While they used to live in a different neighborhood in West Omaha, they had recently moved to their current neighborhood at 45th Street and Ames. She noted that the kids in this new neighborhood were gang affiliated and negatively influenced Erwin. She indicated that Erwin used to only stay home and play video games but now he has been making choices that are not good for him. She stated that Erwin's school behavior and academics have been declining and he has been skipping school with his new friends. She said that she has been getting calls from the school about truancy and was considering moving Erwin to Boys Town day school or something similar to help him make better academic decisions. Erwin denied using substances to her.

The probation officer also completed an interview with Erwin. Erwin said that his friends are the same age as him and that they are good influences on him. He denied gang affiliation. He indicated that he attends school every day unless he is sick. Erwin told the probation officer that he "did not know" if he used substances. A screening risk assessment was completed by the probation officer. According to this risk assessment, Erwin was recommended for secure detention with the Douglas County Youth Center (DCYC). He has remained in custody at DCYC throughout the pendency of this case.

Erwin was referred for an evaluation to be conducted by Conoley, a neuropsychologist. Conoley specializes in child behavior and modification in the field of child and adolescent neuropsychology. Conoley testified that she met with Erwin in four different sessions across 3 days which included the administration of psychological tests and structured interviews. Conoley also interviewed Erwin's mother, Walker, and spoke with Erwin's counselor at DCYC. Conoley reviewed school records for Erwin including his official transcript, daily attendance detail, behavior detail report, counseling contact log, student observation, and special education records. Conoley reviewed various Omaha Police Department records and medical and behavior records from DCYC. There is no indication in the record that Conoley questioned Erwin regarding the events of September 23, 2019.

Conoley diagnosed Erwin with a mild neurocognitive disorder and cannabis use disorder. According to Conoley, Erwin's IQ is 79, which would fall in the very low range. Conoley also testified that Erwin suffers from Erb's Palsy. This condition is manifested in his left arm being noticeably smaller than his right arm. In addition, Erwin's movement of his left arm and hand is extremely limited.

According to Conoley, Erwin has not been prescribed any psychiatric medications nor has he been previously diagnosed with a mental health disorder. Outside of his time at DCYC, he has never undergone counseling or psychotherapy. However, he has been willing to meet with DCYC counselors. Conoley found that particularly during the 2019 school year leading up to the offense, instead of being in school, Erwin was typically smoking marijuana and playing video games. She testified that Erwin's perception of his use of marijuana includes his belief that while he's smoking marijuana, he remains calm, thinks clearer, has a better memory, and does much better.

Conoley's reports included additional discussion of criminal history. Erwin was ticketed for shoplifting but was given the opportunity to participate in and complete a diversion program. While at DCYC, he has been written up for two rule violations but these rule violations did not result in an injury. He reported a fight in DCYC where another detainee had been making comments about his sister and then Erwin hit the other detainee.

Erwin told Conoley that he was jumped into the 29th Street gang when he was 13 years old, but declined to declare a current gang affiliation. The counselor at DCYC reported that Erwin has a gang affiliation but the counselor also did not know what it is. Conoley opined that Erwin does not demonstrate signs of strong affiliation or loyalty to gang membership.

Erwin was reported for a number of various behavioral problems throughout his school career. In third grade, he made inappropriate comments about bringing a shotgun to school, he wrestled with another student resulting in a punishment of in-school suspension, and on a separate occasion he was cited for fighting and holding his hand like a gun. In fourth grade, he was cited

for being rude and disrespectful. In fifth grade, he was cited for not keeping his hands to himself and for repeatedly creating disruptions in classes where he was disrespectful to teachers. In sixth grade, he was cited for bullying, threatening another student that he would "have his house shot up," and for being disrespectful to teachers. In seventh grade, he had 29 behavioral reports for his school behavior. The majority of these reports were due to disruptive or disrespectful behavior toward adults or others. In eighth grade, he had 9 reports that were generally for insubordination. In ninth grade, he had six reports regarding his refusal to work during class and avoidance of work. At the time of his arrest, Erwin was attending Central High School where he was in the 10th grade and had a 0.2222 cumulative GPA. Up to the date of the offense Erwin had missed almost every day of classes. He was also cited for roaming the halls and not attending class. He was suspended for 3 days. Despite the numerous behavioral issues in school including past aggressive acts toward students and teachers and the present charge, Conoley reported that the tests she administered nonetheless placed Erwin within the low range for risk for dangerousness when compared to other juvenile offenders.

Conoley testified that Erwin would most likely be amenable to structured evidence-based programs specifically targeting school achievement, marijuana use, and gang affiliation. Specifically, she recommended that Erwin would need school intervention to adapt curriculum to his needs. He would also need to be referred to a neurologist to address his memory deficits. He would require individual therapy with a Cognitive Behavior Therapist with specialized training in substance abuse and that an emphasis would be needed on motivational interviewing. This would require additional education and would be completed in about 22 weeks.

Conoley testified that the motivation for Erwin's commission of the offense was escape, avoidance, or self-protection. This trait was also manifested in his history of doing everything he could to avoid work in school and to avoid and escape conflict. However, during cross-examination, she conceded that she did not talk to Erwin about his underlying motivation for the commission of the offense. She also conceded that any ultimate success for treatment would depend on Erwin's compliance and cooperation with any programs or counseling that was recommended for him. Finally, she acknowledged that in her past evaluations of juvenile offenders, she had never recommended that a case be retained in district court. According to Conoley, Erwin appreciated the nature and seriousness of the conduct. She also opined that Erwin is a low risk to the community and is a much greater risk to himself.

On May 28, 2020, the district court entered its order denying Erwin's motion to transfer. The court reviewed the considerations under Neb. Rev. Stat. § 43-276 (Reissue 2016) for transferring a case to juvenile court. The court noted that there was no mathematical formula to measure or weigh each criterion but rather it was to engage in a balancing test to balance the protection and security of the public against the practical rehabilitation of the juvenile. The court found that the offenses clearly involved violence, including the use of the firearm and that the injuries suffered by the victim were gravely serious, potentially deadly, and life-altering. The court then considered the threat to public safety from this type of "unnecessary violence." The court found that the motivation for the crimes was adult in nature and Erwin displayed an escalating criminal propensity. The court also found that it was questionable whether Erwin would avail himself of the benefits and services offered in the juvenile court because he demonstrated a

repeated pattern of noncompliance with educators and staff in middle school and high school. The court found that it was in the best interests of Erwin and society to require detention or supervision of Erwin beyond what the juvenile court could provide for him. The court concluded that, given the serious nature of the offenses, Erwin's sophistication, age, maturity, and the security of the public, the juvenile system would be inadequate to address his needs. Erwin appeals.

## ASSIGNMENT OF ERROR

Erwin assigns that the district court erred when it found that the State established a sound basis to retain the matter in the district court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all of the allegations against Erwin put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Reissue 2016).

In the instant case, when Erwin moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276:

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections

- 6 -

43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

Following our review of the record, we cannot find that the district court abused its discretion in denying Erwin's motion to transfer the case to juvenile court. The district court's order clearly demonstrates that it paid appropriate attention to the relevant statutory considerations. In particular, the court considered Erwin's previous history, including whether he would participate in treatment offered to him through the juvenile court. The court noted that Erwin demonstrated a repeated pattern of noncompliance with educators and staff in school. The court paid special notice to the fact that Erwin stopped attending high school and was spending his days smoking marijuana. The court also noted that Erwin was initiated in a gang. Erwin was 16 years and 9 months old at the time of the shooting and was 17 years and 3 months old at the time of the hearing on the motion to transfer. Even if the juvenile court case proceeded at an expeditious pace to disposition it is likely that Erwin would only be immersed in rehabilitative programs for more than 15 months. Erwin's history of resistance to and avoidance of needed education and correction gives cause for concern whether he will avail himself of needed services and programming. Given the short amount of time for the juvenile court to work with him, the violence involved in Erwin's act, and his prior inability to participate in school and other services, the record supports the district court's finding that further efforts to rehabilitate Erwin in the juvenile court is unlikely to be successful.

The court also paid close attention to the violence of the offense and carefully considered how best to promote public safety. Erwin was apprehended after participating in a narcotics sale that resulted in unnecessary violence. K.H. suffered life threatening wounds to multiple organs and has lost one of his legs as a result. He was hospitalized and unresponsive for a significant period of time. His recovery required time spent in a rehabilitation hospital to help him learn to cope with the lifelong implications of his injuries. The court understandably considered the violence in this case as completely unnecessary. According to the evidence, Erwin brought a gun

to a sale of a $20 bag of marijuana. He participated in the theft of the bag. Then when K.H. gave chase and caught Erwin, he either shot K.H. himself or provided the gun to J.J. with instructions to shoot K.H. Then he escaped in K.H.'s vehicle. We recognize that factors exist which would support transfer of the case to the juvenile court. For example, Erwin has no significant criminal history. However, the district court balanced these factors against those which support retention of the case in adult court.

The court considered all other required statutory factors. The court noted that Erwin's criminal behavior was escalating from shoplifting, marijuana use, and truancy to a dangerous and violent act.

Based on this record we cannot find that the district court abused its discretion by retaining this case in the district court. The court was tasked with balancing public safety and security against the rehabilitative needs of Erwin. This balance requires a thoughtful consideration of the relevant statutory factors. The district court conducted and enunciated this thoughtful analysis, ultimately concluding that the case should be retained in the district court.

CONCLUSION

For the reasons discussed above, we find that the district court did not abuse its discretion in refusing to transfer Erwin's case to juvenile court, and thus, we affirm.

AFFIRMED.